Case No. 14-56664, 14-56914

# IN THE UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

_____

ANHING CORPORATION, a California Corporation,

*Plaintiff-Appellant,*

vs.

VIET PHU, INC, a California Corporation,
AN N CUONG CO. INC., LTD., a Foreign Corporation,

*Defendants-Appellees.*

_____

*Appeal from the United States District Court for the Central District of California
No. 13-cv-04348-BRO-JCJ · Honorable Beverly Reid O'Connell*

_____

## BRIEF OF APPELLANT
_____

Daniel J. Callahan (SBN 91490)
   daniel@callahan-law.com
Edward Susolik (SBN 151081)
   esusolik@callahan-law.com
Robert S. Lawrence (SBN 207099)
   rlawrence@callahan-law.com
Jill A. Thomas (SBN 93021)
   jatlaw88@cox.net

**CALLAHAN & BLAINE, APLC**
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Telephone: (714) 241-4444
Facsimile: (714) 241-4445

Attorneys for Appellant
ANHING CORPORATION

## TABLE OF CONTENTS

I.     JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF THE ISSUES PRESENTED FOR REVIEW. . . . 1

III.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       1.   The Joint Pretrial Conference Order. . . . . . . . . . . . . . . . . . . 2
            A.   Stipulated Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            B.   Claims and Defenses to be Presented at Trial. . . . . . . . 5
            C.   The Remaining Issues to be Tried . . . . . . . . . . . . . . . 5
            D.   Testimony.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       2.   The Pre-trial Orders Appealed. . . . . . . . . . . . . . . . . . . . . . 12
            A.   Orders Denying Plaintiff's Ex Parte Application to
                 Conduct Jurisdictional Discovery and Granting
                 Cuong's Motion to Dismiss. . . . . . . . . . . . . . . . . . . . 12
            B.   Order Granting Defendants' MIL #1 and Excluding
                 Plaintiff's Evidence of Damages. . . . . . . . . . . . . . . . 13
            C.   Order Denying Plaintiff's MIL #2 and allowing
                 Evidence of the USPTO File History of Viet Phu's
                 Prior Trademark Application. . . . . . . . . . . . . . . . . . . 15
            D.   Defendant's Amended Contentions of Law and Fact
                 Deleted Damages... . . . . . . . . . . . . . . . . . . . . . . . . . 16
            E.   Order Denying Plaintiff's Request to Strike the Jury
                 Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.   SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . 18

STANDARDS OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.      THE DISTRICT COURT ABUSED ITS DISCRETION BY
        IMPOSING DRACONIAN SANCTIONS PRECLUDING
        ANHING FROM INTRODUCING EVIDENCE OF
        DAMAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

II.     THERE IS NO SEVENTH AMENDMENT RIGHT TO HAVE A
        JURY CALCULATE PROFITS TO BE DISGORGED. . . . . . . . . 26

        1.      In Granting Viet Phu's Motion in Limine #1, the Court
                Excluded All Evidence of Damages. . . . . . . . . . . . . . . . . 26

III.    THE DISTRICT COURT ERRED IN ADMITTING EVIDENCE
        OF THE USPTO FILE HISTORY ON VIET PHU'S
        ABANDONED TRADEMARK APPLICATION. . . . . . . . . . . . . . 30

        1.      The Prosecution History for Viet Phu's Abandoned 965
                Application is Immaterial and Inadmissible. . . . . . . . . . . . . 30

        2.      Plaintiff Put On Evidence of "Actual Confusion" in the
                Markets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

        3.      Defendant Offered No Evidence to Dispute Lin's Testimony
                of Actual Confusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

        4.      The USPTO File History is Inadmissible Hearsay and
                Improper Opinion on the Ultimate Issue of Likelihood of
                Confusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        5.      Any Probative Value of the File History Was Outweighed
                By its Prejudicial Effect, which the Limiting Instruction
                Did Not Overcome. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

IV.     THE DISTRICT COURT ERRED IN GRANTING
        DEFENDANT AN N CUONG'S MOTION TO DISMISS . . . . . . . 43

1.    The Legal Standard for a Motion to Dismiss. . . . . . . . . . . . . 43

2.    Plaintiff Provided Sufficient Facts Supporting Jurisdiction and Denial of Cuong's Motion to Dismiss.. . . . . . . . . . . . . 46

3.    Additional Admissions Elicited from Mr. Pham during Trial Support Jurisdiction over Cuong.. . . . . . . . . . . . . . . 49

4.    Jurisdiction also Exists Under the Agency Theory of Personal Jurisdiction.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

V.    THE DISTRICT COURT ERRED IN DENYING ANHING'S REQUEST TO CONDUCT JURISDICTIONAL DISCOVERY. . . 53

VI.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

STATEMENT OF RELATED CASES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

# TABLE OF AUTHORITIES

## Cases

*Allstate Ins. Co. v. Herron,*
    634 F.3d 1101 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*AMF Inc. v. Sleekcraft Boats*,
    599 F2d 341 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Anderson v. Dassault Aviation*,
    361 F.3d 449 (8th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Brayton Purcell, LLP v. Recordon & Recordon*,
    606 F.3d 1124 (9th Cir., 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cheng v. Boeing Co.*,
    708 F.2d 1406 (9th Cir.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Dukes v Wal-Mart, Inc.*,
    (2004, ND Cal) 222 FRD 189. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Feltner v. Columbia Pictures Television,* Inc.,
    523 U.S. 340, 346, 118 S. Ct. 1279, 140 L.Ed.2d 438 (1998). . . . . . . . 26, 27

*Fifty-Six Hope Road Music, Ltd., et al., v. A.V.E.L.A., Inc.*
    778 F.3d 1059 (9th Cir., 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

*Hanson v. Denckla*,
    357 U.S. 235 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Harris Rutsky & Co. Ins. Servs., v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 55

*In re U. S. Fin. Sec. Litig.*,
   609 F.2d 411 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re Viterra*,
   671 F.3d at 1361-62 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . . 33, 38, 42

*Indiana Plumbing Supply, Inc. v. Standard of Lynn Inc.*,
   880 F. Supp. 743 (C.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 52

*J. McIntyre Mach., Ltd. v. Nicastro*,
   131 S. Ct. 2780 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Maharaj v Cal. Bank & Trust*
   (2013, ED Cal) 288 FRD 458. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
   390 F.2d 117 (9th Cir. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 28

*Mobil Silicon, Inc. v. Mavcom, Inc.*,
   C-10-04783 LHK PSG, 2011 WL 1483706
   (Northern Dist. Cal. 4/18/11). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Nintendo of America v. Dragon Pacific Intn'l.*,
   40 F.3d 1007 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
   105 U.S. 189, 190, 105 S. Ct. 658 (U.S. 1985). . . . . . . . . . . . . . . . . . 38, 39

*Playboy Enterprises, Inc. v. Baccarat Clothing Co.*,
   692 F.2d 1272 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 29

*Reebok Int'l v. Marnatech Enters.*,
   970 F.2d 552 (9th Cir. Cal. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 29

*S.E.C. v. Rind*,
    991 F.2d 1486 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Schwarzennegger v. Fred Martin Motor Co.*,
    374 F3d 797 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Shell v. Shell Oil Co.*,
    165 F. Supp. 2d 1096 (C.D. Cal. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Siano Movile Silicon, Inc. V. Mavcom, Inc.*
    C-10-04783 LHK PSG, 2011 WL 1483706 (N.D. Cal. Apr. 19, 2011).. . . 21

*Sprint /United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379, 384, 128 S. Ct. 1140 (2008).. . . . . . . . . . . . . . . . . . . . . . 21

*Success Is Yours, Inc. v. Life Success Pub., LLC*,
    CV10-0758-PX DJC, 2010 WL 4225880 (D. Arizona 10/21/10). . . . . . . 55

*TPS Utilicom v. AT&T Corp*.,
    223 F. Supp.2d 1089 (C.D. Cal. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*U.S. v. Espinoza-Baza*,
    647 F.3d 1182 (9th Cir. 2011)

*U.S. v. Hitt*,
    981 F.2d 422 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
    556 F.2d 406 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 55

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). . . . . . . . . . . . 51

**Statutes**

15 U.S.C. §1051. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

28 U.S.C. § 1367. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. § 1114(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 22

15 U.S.C. § 1117(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

15 U.S.C. §1125(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1338 (a) and (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Bus. & Prof. Code § 17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Cal. Code Civ. Proc. § 410.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Fed. R. Civ. P. Rule 26 (A)(1)(A) (iii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. Rule 26(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Civ. P. Rule 37(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fed. R. Evid. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Fed. R. Evid. 703. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# CORPORATE DISCLOSURE STATEMENT

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 7.1(a), the

following disclosures are made by Plaintiff, ANHING CORPORATION:

1.   ANHING CORPORATION has no parent corporation; and

2.   No publicly held corporation owns 10% or more of the stock of

ANHING CORPORATION.

Dated: June 15, 2015                    **CALLAHAN & BLAINE, APLC**


By:*/s/ Jill A. Thomas*
Jill A. Thomas
Attorneys for Appellant,
ANHING CORPORATION

# I.

# JURISDICTIONAL STATEMENT

Original jurisdiction in the district court was properly premised on 28 U.S.C. §§ 1331 and 1338 because the Complaint alleged trademark infringement under 15 U.S.C. §§ 1114 and 1125(a). Jurisdiction of the state law claims arose under the district court's supplemental jurisdiction. 28 U.S.C. § 1367. Final judgment was entered on September 18, 2014 and disposed of all claims. (ER I 1-2.) Plaintiff Anhing Corporation timely filed its Notice of Appeal on October 17, 2014. (ER II 23-46.)

This Court has jurisdiction under 28 U.S.C. § 1291.

# II.

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the district court erred in denying Anhing's motion in limine #1, excluding evidence of Anhing's damages under FRCP, Rule 37 for failure to disclose the amount and calculation of damages required by Rule 26, where Plaintiff sought only disgorgement of Viet Phu's profits and Viet Phu was in its possession of all information and documents of its profits and losses.

1

2.     Whether the District Court erred in denying Anhing's motion to strike the request for jury trial after the Court had granted Defendant's motion in limine # 1, precluding Anhing from presenting any evidence of damages, and leaving only equitable issues to be tried.

2.     Whether the District Court erred in denying Anhing's motion in limine #2, and allowing the admission of Viet Phu's abandoned of its trademark application and related USPTO File History.

3.      Whether the District Court erred in granting the motion to dismiss of defendant, An N Cuong Co. Inc., LTD, a foreign corporation, for lack of personal jurisdiction.

4.     Whether the District Court erred in denying Anhing's request for continuance of the hearing on the motion to dismiss to conduct jurisdictional discovery.

## III.

## STATEMENT OF THE CASE

### 1.     The Joint Pretrial Conference Order

Plaintiff Anhing Corporation filed its Complaint for trademark infringement. (Excerpts of Record ["ER"] Vol. V 607-626.)  On September 5, 2014, District Court entered a Final  Joint Pretrial Conference Order.  (ER II 53-92.)   Pursuant to

that Order, the parties stipulated to various facts and the elements required to establish the claims, including:

### A. Stipulated Facts.

Anhing was founded in 1980 by Henry Ly. Anhing owns five U.S. Trademark Registrations for the "Anhing Logo" (the Anhing marks) both with and without the term "Caravelle"), for use by Anhing in connection with certain products, including fish sauce. Anhing has used the marks since 1980, which is incontestable pursuant to Section 15 of the Lanham Act. Anhing's trademark registrations are not limited to any particular color. The Anhing Marks never appear with the words "Red Boat." The word "Caravelle" means sailboat in French. Anhing's 2014 catalog (Bates-labeled ANHING000926-1122) contains all of the products that Anhing currently sells. (Id., 55, 56.)

Anhing's products are sold in Asian markets, Asian supermarkets, grocery stores, restaurants and cafeterias. Anhing's products are not available for sale on Anhing's website. Anhing's catalogs are mailed to its retailers, who are told not to share Anhing's catalogs with third parties. (Id., 57.)

Viet Phu has been using the following "RED BOAT & Design" mark in connection with fish sauce since 2011. In order to determine whether the RED BOAT & Design mark was available for Viet Phu's adoption and use, Viet Luu,

aka Sam Luu ("Luu"), the President and CEO of Viet Phu, personally ran his own

search on the United States Patent & Trademark Office ("USPTO") website. As

part of this diligence, Luu ran a search on the Trademark Electronic

Search System ("TESS") maintained by the USPTO. (Id., 57.)

On April 29, 2011 Viet Phu filed an application with the USPTO, Serial No.

85/308,962, to register the RED BOAT & Design mark shown above in connection

with fish sauce. USPTO records for Viet Phu, Inc.'s trademark application No.

85/308,962 include a description of the mark, in relevant part as follows:

> *The color(s) red and black is/are claimed as a feature of the*
>
> *mark. The mark consists of Silhouette of Asian style sail*
>
> *boat, also known as a junk ship, with "red boat" wording*
>
> *below boat logo.*

Viet Phu's application for the RED BOAT & Design mark was

subsequently abandoned. (Id., 58.)

Anhing sent a cease and desist letter on January 31, 2013 to Viet Phu

putting Viet Phu on formal actual notice of Anhing's rights to the Anhing Marks.

Viet Phu continued to sell its fish sauce product after January 31, 2013.

Anhing products are sold in Northern and Southern California (among

other states), including in Milpitas, California where Viet Phu is headquartered.

Viet Phu's products are available for sale on Viet Phu's website. Viet Phu's primary method for marketing its fish sauce is through celebrity chefs and writeups on websites operated by third parties. (Id., 58.)

### B. Claims and Defenses to be Presented at Trial.

Anhing pursued the following claims and defenses to be presented at trial:

**Claim 1:** Viet Phu has infringed Anhing's federally registered trademarks under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a).

**Claim 2:** Viet Phu is liable for Unfair Competition and False Designation of Origin under 15 U.S.C. §1125(a).

**Claim 3:** Viet Phu has infringed Anhing's unregistered marks under the common law of California.

**Claim 4:** Viet Phu is liable for unfair competition under Cal. Bus. & Prof. Code § 17200. (ER II 59-64.)

Defendant, Viet Phu, asserted that Anhing would not be able to prove its claims, that there is no likelihood of confusion between Anhing's Marks and the Red Boat Mark, and that Anhing has not suffered any damages or irreparable harm and is not entitled to injunctive relief. (ER II 64-76.)

### C. The Remaining Issues to be Tried.

(1) Whether Viet Phu is liable for infringing Anhing's federally registered

5

trademarks under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(a).

(2) Whether Viet Phu is liable for Unfair Competition and False Designation of Origin under 15 U.S.C. §1125(a).

(3) Whether Viet Phu is liable for trademark infringement under the common law of California.

(4) Whether Viet Phu is liable for unfair business practices under Cal. Bus. & Prof. Code § 17200.

(5) If Viet Phu has violated any of Anhing's rights, what damages are to be awarded to Anhing.

(6) Whether Anhing is entitled to permanent injunction against Viet Phu preventing all future use of Viet Phu's mark and any other confusingly similar mark.

(7) Whether Anhing is entitled to an award of its attorneys' fees and costs of suit herein.

(8) Whether Viet Phu is entitled to an award of its attorneys' fees and costs of suit herein.  (ER II 76, 77.)

D.    Testimony.[1]

Plaintiff, Anhing Corporation ("Anhing" or "Plaintiff") was founded in 1980 by Henry Ly, a hardworking man who came to the United States from Vietnam with little money. His goal was to provide a one-stop service center for all Asian grocery markets in North America. Since then, Anhing, which has always remained and still is a family owned business, has become very successful.  (ER V 648-650.)

By October 1980, Anhing had adopted a certain junk ship design as its logo (the "Anhing Logo"), which it uses both with and without the term "Caravelle" underneath (collectively, the "Anhing Marks").  Since that time, Anhing has used the Anhing Marks as its primary marks for a variety of quality food products, including but not limited to fish sauce and various other cooking sauces.  The Anhing Marks also appear in red on the outside of Anhing's facility in Los Angeles, on its trucks, on its sales representatives' uniforms, on the cover and every page of its catalog for more than the last 20 years, in Anhing's other advertising and promotional materials, and on many of Anhing's products. At the time Anhing started to use its junk ship as its trademark, it was not aware of any other marks using of a boat with Asian food products.  For the past 34 years,

_____

[1]  Because the sufficiency of the evidence is not challenged, only portions of the testimony are summarized.

7

Anhing has consistently used its red boat sailboat on many of the Anhing products. (ER V 668, 669.)

The Anhing Marks are federally registered with the USPTO for use with a variety of its products, including fish sauce, and are incontestable. (ER V 649-666, 667, 670-678.)

Defendant, Viet Phu, Inc. was incorporated in 2009. The dream of Cuong Pham, the Vice-President of Viet Phu, was to bring the fish sauce [from Vietnam to the U.S.] because "[w]hen I left my country in 1979, all the fish sauce here that we tested, it's not the same. My family miss that. (ER V 698, 699).

Mr. Pham was involved with another business back in Vietnam, an LLC, called An N Cuong ("Cuong"), which manufactures fish sauce - the fish sauce that he sells through the company here. Mr. Phu admitted that <u>he has an ownership in that company that makes the fish sauce</u>. (Id. 695.)

Cuong has been engaged in business since 2006. During those three years before he started his own business (Viet Phu) in 2009, Mr. Pham was involved in the manufacturing and sale of fish sauce through family members - which own Cuong. "It's another family business, and we sell to other companies in Vietnam and Viet Phu to enter into the United States. (Id., 705, 706.) <u>Mr. Pham's family formed the manufacturing company, An N Cuong, which manufactures the fish</u>

8

sauce, and Mr. Pham gets a percentage of those profits based on his ownership in the company. (Id., 709:12-25.)

Viet Phu purchases the sauce from Cuong and the sauce is bottled and labeled in Vietnam. Mr. Pham is in charge of sales and marketing, and gets a percentage of the profits of Viet Phu as well. Mr. Pham markets his fish sauce in California, in the United States, on the web, and through magazines. This is the same type of marketing done by Anhing as they compete in the same market areas. (ER V 710, 711.)

Mr. Pham admitted some similarities of Viet Phu's mark and Ahning's, including that they are both boats, both red, and both have two sails with lines in the sails. The boats are a little different in design but both have a platform which is the basic part of the boat; and both are for fish sauce. (Id. 711:12-712:15.) He markets his product to grocery stores, food service and on-line, the same as Ahning's marketing of its product. (Id., 713:19-714:7.)

He believes his product is superior because it is "40 N" which means 40 grams of Nitrogen per liter. (Id., 714:17-715:17, and Exhibit 83.) They entered this market because there was no premium fish sauce on the market. In his opinion, it's extra virgin so he calls it extra virgin. He pays more for his own product from his own company - "a lot more" - than other people do. When asked "But aren't you

9

making profit on both ends of the fence on that,?  He responded: "Im not sure about

profit, but we pay more for our. . ."  ER V, 716:5-25.)  He admitted that An N

Cuong is "his company:

> Q.     So **when you - - as the manufacturer, you set the price of**
> **what you're selling the product to the defendant**; isn't that
> correct?
> A.     No.  It's the market price.
> Q.     Well- -
> A      Whatever it costs.
> Q      **Your company sets the price, doesn't it, in Vietnam**?
> A      **Yeah** - -
> Q      They're selling it?
> A      Yes."

(ER V 717:1-10; emphasis added.)

He unequivocally admitted that they [Viet Phu] pay more for this product

from his company, the manufacturer [Cuong] and that his company in Vietnam

[Cuong] sets the price because they are selling it. (Id., 716, 717.)

Viet Phu filed an application with the USPTO to register its mark, claiming

use in commerce for fish sauce since February 3, 2011 and claiming the color red

as part of the mark. (ER V 724:6-725:2.)  Viet Phu abandoned its trademark

application because it was denied by the USPTO based on a conflict with another

mark for a children's product, Wiggles, made by "The Big Red Boat" in Australia.

Anhing's marks were not cited by the USPTO as a basis for denial of Viet Phu's

application. The Application was abandoned based on the cost to dispute the decision and he continued to sell his product when he learned that the Australian product was not sold in the U.S. (ER V 718-720, 724-725, Exhibit 63.)

Jackie Lin, was the manager of Hawaii Supermarket , a 40,000 square foot supermarket for over 20 years. His work included purchasing products sold in the store, including Ahning products which Hawaii Supermarket carried for over 20 years and also used Anhing's catalog. On the front of the catalog is the logo of Anhing which he said "we call Red Boat." (Id., 682, 683 and Exhibit 22.) Mr. Lin knows the Anhing logo well after all of these years and in addition to the catalog has seen Anhing's logos on their merchandise, trucks, and sales rep uniforms. (Id., 684-687 and Exhibit 6.)

Despite his long-term familiarity with Anhing's products which displayed the Anhing Marks, Mr. Lin became **actually confused** by Viet Phu's Mark when he erroneously ordered Viet Phu's Red Boat fish sauce when he had intended to purchase Anhing's fish sauce for his supermarket. He believed he had ordered Anhing's product because he saw the boat that led him to believe it's Anhing's product. After he placed the order, he realized it was not Anhing's products. (Id., 688-692 and Exhibit 83.) In his 20 years experience as manager at Hawaii Supermarket, no other company ever used a junk ship but Anhing, except for Viet

11

Phu on this product. Anhing's mark appears on its fish sauce products in red. (Id.,

692 and Exhibit 83.)

Although Anhing sent a cease and desist letter on January 31, 2013 to Viet

Phu, it continued sell its fish sauce product with the mark after January 31, 2013.

(ER V 725:5-9.)

### 2. The Pre-trial Orders Appealed.

On October 28, 2013, the Court ordered the matter to a four day jury trial."

(ER V 593.)

### A. Orders Denying Plaintiff's Ex Parte Application to Conduct Jurisdictional Discovery and Granting Cuong's Motion to Dismiss.

On October 22, 2013, defendant, An N Cuong ("Cuong") was served with

the Complaint. (ER V 581.) On November 14, 2013, defendant Cuong filed a

Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction and the

Declaration of Pham Cuong in support thereof. (Id., 551-580.)

On November 24, 2013, Plaintiff filed its Opposition to the Motion to

Defendant An N Cuong's Motion to Dismiss Complaint for Lack of Personal

Jurisdiction and the Declaration of Jeffery A. Kobulnick in support. (ER V 451-

498.)

On November 23, 2013, Plaintiff filed a Notice and Ex Parte Application for Leave to Conduct Limited Jurisdictional Discovery and to Continue Hearing on Defendant's Motion to Dismiss and the Declaration of Jeffrey A. Kobulnick in support thereof. (ER V 510-550.)

On November 25, 2013, Defendant, Cuong, filed its Opposition to Ex Parte Application for Leave to Conduct Limited Jurisdictional Discovery and to Continue Hearing on Motion to Dismiss. (ER V 499.)

On November 26, 2013, Plaintiff filed its Reply in support of Ex parte Application. (ER III 331.)

On December 2, 2013, Cuong filed its Reply to Plaintiff's Opposition to Motion to Dismiss. (ER III 317-339.)

On December 18, 2013, the District Court ruled without conducting an evidentiary hearing and granted Defendant's Motion to Dismiss for lack of personal jurisdiction and denied Plaintiff's request for discovery and an evidentiary hearing. (ER I 9-22.)

### B. Order Granting Defendants' MIL #1 and Excluding Plaintiff's Evidence of Damages.

On July 23, 2014, Defendant filed an Application for Order re: Unopposed Application to file its Motion in Limine ("MIL") #1 under seal which was granted

and filed its Motion in Limine #1 and supporting Declaration under seal. (ER IV 346-450; filed under seal with the Protective Order.) Defendant's MIL #1 sought an Order precluding Anhing from presenting any evidence as to the issue of Anhing's damages based on the primary basis that Anhing failed to produce any information to Viet Phu regarding its claim for damages, including the amount it seeks in this litigation, the calculation of any amount being sought, or the methodology employed in calculating damages. (ER IV 347.)

On August 4, 2014, Anhing filed its opposition to Defendant's motion in limine #1. (ER II 158-183.)

On August 8, 2014, Viet Phu filed its Reply to Opposition to MIL #1. (ER II 137-157.)

The District Court granted Viet Phu's MIL #1 and excluded all evidence of damages, except as to irreparable harm. (ER I 3, ¶3.) The Court relied on FRCP, Rule 26 (A)(1)(A) (iii), which requires that a party provide to other parties a computation of each category of damages claimed, and Rule 37 which allows the court to exclude evidence not disclosed unless the failure to disclose was substantially justified or harmless. The court found that Anhing failed to provide the required calculations and that there was no substantial justification, and imposed the sanction of Rule 37 excluding all evidence of damages. (ER V,

14

629:21-631:25.)  The Court accepted the response of Anhing's counsel to its

inquiry, that Plaintiff would provide evidence of irreparable harm (re: injunctive

relief] by the testimony of Anhing's president.  (Id.,628:5-25.)

### C. Order Denying Plaintiff's MIL #2 and allowing Evidence of the USPTO File History of Viet Phu's Prior Trademark Application.

On July 28, 2014, Plaintiff filed its Motion In Limine No. 2 to exclude

evidence at trial of the prosecution history for Viet Phu's abandoned trademark

application and the Declaration of Jeffrey A. Kobulnick. (ER II 200-217 and III

218-316.)

On August 4, 2014, Defendant Viet Phu filed its Opposition to Plaintiff's

Motion In Limine No. 2 and the Declaration of Stephen E. Tiller. (ER II 184-199.)

On August 12, 2014, Plaintiff filed its Reply in support of Plaintiff's

Motion In Limine No. 2 (ER II 111-122), the Supplemental Declaration of Jeffrey

Kobulnick (ER II 131-136), and Plaintiff's Evidentiary Objections to the

Declaration of Stephen Tiller. (ER II 123-130.)  On August 12, 2014, Plaintiff

filed its Notice of Errata Re: Filing Reply Brief in support of Plaintiff's Motion In

Limine No. 2. (ER II 108-110.)

On September 2, 2014, the District Court entered an Order denying

Plaintiff's MIL #2, subject to a limiting instruction.  (ER 1, 3, ¶2.)

15

**D.    Defendant's Amended Contentions of Law and Fact**

**Deleted Damages.**

On September 4, 2014, defendant, Viet Phu filed its Amended

Contentions of Law and Fact.  (ER II 93-110.)  Viet Phu conceded that damages

were no longer an issue, stating,

**"THIS COURT GRANTED VIET PHU'S MOTION *IN LIMINE* AND**

**HAS EXCLUDED ALL EVIDENCE OF DAMAGES."**

(ER II 99:2-3 AND 106:7-8.)

**E.    Order Denying Plaintiff's Request to Strike the Jury Trial.**

On September 8, 2014, Anhing filed a Bench Brief re: Jury Trial, asking

that the Court strike the prior request for jury trial.  (ER II 48-52.)  The motion

was made on the grounds that following the Court's Order granting Defendant's

MIL #1, precluding all evidence of damages, only equitable issues of

disgorgement of profits and injunctive relief remained to be tried.  The matter was

heard and argued. (ER V 634-641.)  Counsel for Anhing stated:

> "we are only left with the equitable issues of whether a
>
> preliminary injunction should issue and whether a
>
> disgorgement should take place as to the profits made by
>
> the defendant. . . . those issues are equitable issues in and

<u>of themselves and do not require nor can a jury address</u>

<u>those issues</u>."

(Id., 635:18-25; emphasis added.)

    The District Court denied the motion, stating:

      "I disagree with the plaintiff in this setting.  I believe

      that Feltner stands for the proposition that . . . the

      Seventh Amendment right to a jury determination, even

      as to the amount of statutory damages, remains."

(Id., 640:19-24.)

    On September 9, 2014, jury trial commenced. (ER II 47.)

    On September 11, 2014, the jury returned a Special Verdict finding that there was no likelihood of confusion and on September 18, 2014, the District Court entered Judgment Regarding Jury Verdict in favor of Defendant, Viet Phu, and against Plaintiff, Anhing. (ER I 1-2.)

    On October 17, 2014, Plaintiff filed its Notice of Appeal. (ER II 23-46.)

## III.

## SUMMARY OF ARGUMENT

This is a trademark infringement case. The issue to be determined was whether or not after more than 30 years of use by the Plaintiff, the Anhing Corporation's ("Anhing") Asian junk sail ship, which Anhing predominantly uses in red ("Anhing's Mark") is identifiable with the Anhing's Asian food products, and if so, whether the Defendant, Viet Phu, Inc.'s ("Viet Phu") use of a very similar red Asian junk sail ship would likely be confused with the Anhing Mark by consumers of the product. Since 2011, Viet Phu has been marketing the same product, fish sauce, in the same markets, to the same customers, using a design that is almost identical to Anhing's Mark which Anhing has continually used throughout the United States for over thirty years.

The matter proceeded to a jury trial, which resulted in a Special Verdict with a finding of no likelihood of confusion. Judgment was entered in favor of Defendant and against Anhing.

The decision should be reversed because the erroneous Special Verdict and Judgment was the result of the following erroneous rulings made by the District Court prior to trial:

First, the Court excluded all evidence of Anhing's damages pursuant to FRCP Rule 37 for failure to disclose Anhing's computation of damages pursuant to Rule 26. This draconian sanction was excessive and unreasonable and an abuse of discretion because any purported lack of compliance with Rule 26 was harmless as Anhing only sought disgorgement of Viet Phu's profits, and all information and documents regarding Viet Phu's profits and losses) were always in the possession of Viet Phu.

Second, after having granted Viet Phu's MIL #1 and excluding all evidence of damages, the Court erroneously denied Anhing's motion to strike the jury trial and the matter proceed to trial by jury despite the fact that only the equitable issues remained, to wit, disgorgement of profits and injunctive relief.

Third, the Court denied Anhing's MIL #2, allowing the admission of the USPTO File History of Viet Phu's abandoned trademark application. This irrelevant File History was used by Viet Phu for the point that since the examining attorney at the USPTO failed to cite the Anhing Mark, there was no likelihood of confusion. The File History did not show by any reliable evidence that the examining attorney had in fact reviewed and compared Anhing's Marks with Viet Phu's mark. Moreover, although Viet Phu admitted that the extent of the examining attorney's analysis of the Anhing Marks was unknown, it claimed that

19

it was <u>likely</u> that he reviewed it. This File History was inadmissible on many grounds, including that it was speculative and it was inadmissible expert opinion. It was also highly prejudicial because of the likelihood that the jury would be swayed by the fact that if an attorney at the USPTO did <u>not</u> cite it (i.e., no likelihood of confusion), they (the jury) should also so conclude.

Fourth, the Court granted co-defendant, An N Cuong's FRCP 12 (b) motion to dismiss for lack of personal jurisdiction and denied Anhing's request for a brief continuance of the hearing and permission to conduct jurisdictional discovery. In addition to the fact that the motion should have been denied, testimony later elicted at trial (e.g., that the Vice-President of Viet Phu was an owner of Cuong and  received profits from both companies, and that Cuong was a "family" business which benefitted from Viet Phu's website) further bolstered the fact that the Court had jurisdiction over Cuong and the motion should have been denied.

The errors were prejudicial, resulting in the erroneous Judgment.

## STANDARDS OF REVIEW

The Ninth Circuit reviews the question of entitlement to a jury trial *de novo*. *Fifty-Six Hope Road Music, Ltd., et al., v. A.V.E.L.A., Inc.* 778 F.3d 1059, 1074 (9th Cir., 2015); *S.E.C. v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993).

The Court reviews *de novo* the district court's determination that it does not have personal jurisdiction under FRCP 12(b)(2). *Brayton Purcell, LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir., 2010).

The Court reviews a district court's decision to grant or deny discovery on jurisdictional facts for abuse of discretion. *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir.), cert. denied, 464 U.S. 1017, 104 S. Ct. 549, 78 L. Ed. 2d 723 (1983); *Harris Rutsky & Co. Ins. Servs., v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). The Ninth Circuit holds a broad view of the appropriate scope of jurisdictional discovery. *Siano Movile Silicon, Inc. V. Mavcom, Inc.* C-10-04783 LHK PSG, 2011 WL 1483706 (N.D. Cal. Apr. 19, 2011); see also *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 431 at n.24 (9th Cir. 1977).

Motions in limine and evidentiary rulings are reviewed under the abuse of discretion standard. *Allstate Ins. Co. v. Herron* (9th Cir. 2011) 634 F.3d 1101, 1110; *Sprint /United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S. Ct. 1140, 1145 (2008).

21

# ARGUMENT

# I.

# THE DISTRICT COURT ABUSED ITS DISCRETION BY IMPOSING DRACONIAN SANCTIONS PRECLUDING ANHING FROM INTRODUCING EVIDENCE OF DAMAGES

Plaintiff, Anhing Corporation, pursued a claim for trademark infringement under Section 32(a) of the Lanham Act. 15 U.S.C. §1114(a) and that Viet Phu's use of its Mark was damaging Anhing. (ER II 59-62.) Section 35 of the Lanham Act provides that, "subject to the principles of equity," a successful plaintiff shall be entitled to "recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C.§ 1117(a).

The Ninth Circuit has recognized a plaintiffs' right to disgorgement of profits as a matter of right as a measure of damages, with allocations of burden of proof. Specifically, a trademark defendant's profits may be awarded under one of two theories: (1) in cases where the plaintiff is directly competitive with the defendant, as a proxy for plaintiff's lost profits (a form of actual damages), or (2) as unjust enrichment. *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117, 123 (9th Cir. 1968). The logic of *Maier* has been consistently followed in this Circuit. See, e.g., *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d

22

1272, 1274 (9th Cir. 1982) ("Maier justified the accounting of profits remedy in direct competition cases as necessary to secure the return of all profits to the deserving trademark owner and justified the accounting of profits remedy in non-direct competition cases...as necessary to prevent the unjust enrichment of the infringing party.").

In seeking profits, Anhing's only burden was to prove the defendants' gross revenues.  15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only.").  The burden then falls on defendant, Viet Phu, to prove all deductions and expenses that it believes are necessary to reach an accurate calculation of profits. ("[D]efendant must prove all elements of cost or deduction claimed."); *Maier, supra,* 390 F.2d at 124 (9th Cir. 1968) ("the defendant has the burden of proof as to any deductions from his gross sales.").  See also, *Reebok Int'l v. Marnatech Enters*., 970 F.2d 552, 558-559 (9th Cir. Cal. 1992); *Nintendo of America v. Dragon Pacific Intn'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("The burden is upon Defendant to prove that sales were demonstrably not attributable to the infringing mark.").

Unfortunately, instead of allowing the parties to proceed in accordance with these well-established burdens of proof, the District Court relied upon its Order precluding Anhing from offering evidence of damages (ER I 3, ¶3),  to also

23

preclude Anhing from contesting Viet Phu's expenses ("Anhing has forfeited its right to contest that expense.").] (ER V 644:22-645:4.)  The ruling not only exceeded the  original scope of the Order and relief sought, but also effectively struck Anhing's claim for disgorgement of profits as allowed under 15 U.S.C.§ 1117(a).  Such a draconian sanction was neither reasonable nor justified particularly where Viet Phu failed to show any evidence whatsoever of harm and it was undisputed that Viet Phu was in possession of the information and documents concerning its own profits and claimed offsets.   It would not be unprepared or taken by surprise by any cross-examination.

Many cases decided under Rule 37 have found that similar sanctions are not justified and will be reversed on appeal where the failure to comply Rule 26 (timely exchange of damages calculation) was harmless to the other party, as here.  See, for example, *Maharaj v Cal. Bank & Trust* (2013, ED Cal) 288 FRD 458 (although plaintiff's disclosures did not provide analysis of her computation of past or future economic damages, she had shown that her failure to disclose that analysis was harmless since information on which those damages were calculated was already in defendant's possession); *Dukes v Wal-Mart, Inc*. (2004, ND Cal) 222 FRD 189 (employees' motion to strike declarations of 239 of employer's store managers under Fed. R. Civ. P. 37(c)(1), on ground that employer did not timely disclose 215

24

of them under Fed. R. Civ. P. 26(a)(2), was denied because employees failed to show that they were prejudiced, failed to even assert that they suffered actual prejudice from violation, and failed to indicate that they would have deposed any of 215 managers even if given opportunity); *West v. Hsu* (In re Advanced Modular Power Sys.) (2009, BC SD Tex) 413 BR 643, affd (2009, SD Tex) 2009 US Dist LEXIS 126483 (defendants were not prejudiced by nondisclosure of documents in their possession).

Similarly, Anhing's failure to provide defendant with a "calculation" of its damages was "harmless" because the numbers used for this calculation would have been based on Viet Phu's own P&L statements and underlying records and testimony of their own witnesses. Under the circumstances, the District Court abused its discretion in cutting off Anhing's right to question the reasonableness of the claimed costs. While the trial court has the authority to impose Rule 37 sanctions, the severity of the sanctions imposed here were so unjustified and unreasonable as to deny Anhing its constitutional right to a fair trial.

## II.

## THERE IS NO SEVENTH AMENDMENT RIGHT TO HAVE A

## JURY CALCULATE PROFITS TO BE DISGORGED

**1.     In Granting Viet Phu's Motion in Limine #1, the Court Excluded All Evidence of Damages.**

After precluding Anhing from presenting any evidence of damages, the

District Court further erred by denying Anhing's motion to strike the request for

jury trial made in its Complaint, stating:

> I disagree with the plaintiff in this setting.  I believe that
>
> Feltner stands for the proposition that . . . the Seventh
>
> Amendment right to a jury determination, even as to the
>
> amount of statutory damages, remains.

(ER V 640:19-24.)[2]

This reasoning was wrong.  First, it is undisputed that damages were no

longer an issue - as evidence of <u>all</u> damages had been stricken under FRCP, Rule

37.  Second, reliance on *Feltner* for "the  proposition that . . . the Seventh

Amendment right to a jury determination, even as to the amount of statutory

damages, remains" was incorrect.  *Feltner* was a copyright action and Anhing had

---

[2] Defendant, Viet Phu never made a request for jury trial and argued in another motion in limine that Plaintiff waived its right to a jury trial.(Dkt. #70.)

elected disgorgement of profits over statutory damages.   Ahning provided ample legal authorities that based on the fact that only equitable relief remained to be tried, the law is clear that there is no right to a jury trial. (ER II 48-52 and ER V 634-641.)

At the hearing, counsel for Ahning made clear:

> [W]e are only left with the equitable issues of whether a preliminary injunction should issue and whether a disgorgement should take place as to the profits made by the defendant. . . . those issues are equitable issues in and of themselves and do not require nor can a jury address those issues.

(ER V 635:18-25.)

In *Feltner*, the Supreme Court  characterized disgorgement of improper profits as an equitable remedy. *Feltner v. Columbia Pictures Television,* Inc., 523 U.S. 340, 346, 118 S. Ct. 1279, 140 L.Ed.2d 438 (1998) ("Feltner").  The Ninth Circuit recently made clear that claims for disgorgement of profits and injunctive relief are equitable, not subject to a jury trial.  *Fifty-Six Hope Road Music, Ltd., et al., v. A.V.E.L.A., Inc.* 778 F.3d 1059, 1075 (9th Cir., 2015) ("[a] claim for disgorgement of profits under §1117(a) is equitable, not legal.")

27

It appears that the District Court denied the motion based on timing, stating that it was "astonishing that it was just recognized [as an issue] . . . "it shouldn't wait until the day of the jury trial. . . . But now you've inconvenienced the people that sacrifice to decide cases for our justice system. . ." (ER V 636:14-25.) However, the slight delay of a few days in bringing the Motion did not justify its denial. The jury trial had not yet commenced and the Motion in Limine excluding evidence of damages had just been granted a few days prior. In preparing for trial, Plaintiff's counsel fully digested the ramifications of the Court's rulings on multiple motions in limine, including this one. Moreover, Defendant provided no legal authority to support its argument that where only disgorgement of profits and injunctive relief remain, that the case should be tried before a jury simply because this case arises out of trademark infringement law. (ER V 639:18-22.)

The District Court erred in relying on *Feltner* for the proposition that a jury trial is required in this trademark action which was left with only equitable issues remaining on the eve of trial. Neither Defendant's counsel nor the Court pointed out any actual or statutory damages that remained where Plaintiff had elected its intent to seek only disgorgement of profits, as Plaintiff was entitled to do, and the Court had excluded all evidence of damages. *Maier Brewing Co. v. Fleishmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir.1968). In addition, no request was made for statutory damages during opening argument, closing argument, or in

28

Plaintiff's trial brief or statement of issues. <u>Viet Phu also emphasized that no issue of damages remained to be tried</u>. (ER II 106:7-8 ["**This Court . . . has excluded all evidence of damages.**"].)

This Court's recent decision in *Fifty-Six Hope Road Music, Ltd., et al., v. A.V.E.L.A., Inc., supra,* 778 F.3d at 1075 reiterated the longstanding rule that an award of defendant's profits is akin to the equitable remedy of unjust enrichment and requires an accounting of the defendant's profits. This Court made clear that there is no Seventh Amendment right to have a jury determine that issue. See also, *Playboy Enterprises, Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272 (9th Cir.1982). An accounting of profits may be justified either as a means of compensating the plaintiff for his lost sales in cases involving direct competition between the infringer and the trademark owner, or to prevent the unjust enrichment of the infringing party and deter further infringement. Ibid. An accounting based on unjust enrichment is equitable relief. *Reebok Int'l v. Marnatch Enters*., 970 F.2d 552, 559 (9th Cir. 1992) (concluding in the context of an asset freeze order that "an accounting for profits ... is an equitable remedy subject to the principles of equity"). Because such relief is equitable rather than legal, it does not support the right to a jury trial. Id.

It is settled that injunctive relief is also an equitable remedy that must be decided by the court, without jury consideration. *In re U. S. Fin. Sec. Litig*., 609

29

F.2d 411, 417 (9th Cir. 1979) ("If this case falls within equity jurisdiction, then there is no right to jury trial").

Therefore, given the remaining claims following the District Court's rulings on the motions in limine, there were no remaining claims entitling any party to a jury trial and the District Court therefore erred in denying Anhing's motion to strike the jury trial. Plaintiff was prejudiced by this erroneous ruling, which resulted in the erroneous Special Verdict and Judgment thereon.

## III.

## THE DISTRICT COURT ERRED IN ADMITTING EVIDENCE OF THE USPTO FILE HISTORY ON VIET PHU'S ABANDONED TRADEMARK APPLICATION

### 1. The Prosecution History for Viet Phu's Abandoned 965 Application is Immaterial and Inadmissible.

In its Motion In Limine No. 2, Plaintiff sought an order prohibiting Viet Phu from introducing as evidence the United States Patent and Trademark Office File History for Trademark Application Serial Number 85308962, which was filed and subsequently abandoned by Viet Phu (the "File History"). (ER II 200-217.) The motion was made on the basis that Viet Phu sought to argue at trial that the USPTO's failure to cite one or more of the Anhing marks as a bar to registration of

Viet Phu's Application was probative of a legal conclusion by the USPTO that the Anhing Marks and the Red Boat and design Mark can co-exist without the likelihood of confusion.  That argument fails however, because the issue became moot, the File History is inadmissible under numerous Federal Rules of Evidence, and the court does not owe deference to ex parte administrative actions taken or not taken by the USPTO.  (ER II 204-207.)

Cuong Tan Pham, is the Vice President of Viet Phu, (ER V 697:11-698:25.) The Red Boat trademark with the logo appears on the product, Exhibit 83.  (Id., 700.)  The most prominent part of the brand of his fish sauce launched in 2011 is Red Boat fish sauce with the junk ship (ER V 701:14-702:24.)

He applied for a trademark application, which was denied.  Exhibit 63 is  the certification of the Trademark File History for Red Boat. (ER V 718:17-719:9.) The USPTO denied his trademark application based on a conflict with another mark owned by a company called Big Red Boat in Australia which makes Wiggles products for a kids' TV show.  The USPTO never cited Anhing's marks against his application.  (Id., 719:19-720:10.)   This trademark application was abandoned because it was to expensive to respond.  They  continued to use the mark because he understood there was no prohibition against doing so despite the abandonment of the application. (Id., 720:14-7212:9.)

In his closing argument, counsel for Viet Phu emphasized this inadmissible

evidence, which clearly affected the Jury's verdict:

> Mr. Pham also testified that . . . [t]hey filed for a
> registration at the Patent & Trademark Office.
> And you will see from the prosecution history, as the
> judge referred to it, that they had a lawyer file that for
> them. And when the examiner at the Patent & Trademark
> Office came back and said, "Here's what I think about
> your application," that **examiner did not reference the
> Anhing mark**. It referenced The Wiggles
>
> . . .
>
> **They filed a registration and did not get a citation for
> the Anhing mark. That led them to the conclusion
> that using this mark, the "Red Boat" mark was okay**.

(ER V 726:3-727:16; emphasis added.)

The strong suggestion here was that if the USPTO found no likelihood of

confusion with Anhing's Marks, there is no likelihood of confusion. It is only a

matter of common sense that the jury would have relied upon this and come to the

same conclusion as surely the Examining Attorney, who works at the USPTO and

whose job it is to find any conflicts, must know what he's doing. Why should they

come to a different conclusion, when this expert found no conflict. That is what

was "suggested" by Mr. Pham and his counsel. (As discussed *infra*, the "problem"

is we don't know which of those results the Examining Attorney actually read.)

This evidence was speculative, immaterial, irrelevant, and highly prejudicial.

For evidence to be considered relevant, it must consist of facts "of consequence in

determining the action." Fed. R. Evid. 401(b).  Likelihood of confusion between the Anhing Marks and the Red Boat & Design mark was the fundamental issue here.  *In re Viterra*, *supra*, 671 F.3d at 1361-62.  Since the prior Application was abandoned, the information contained in the file became moot and was therefore irrelevant.

Even more significant, the *Sleekcraft* factors for likelihood of confusion take into account consumers in the marketplace, not the opinion of one USPTO Examining Attorney.  *AMF Inc. v. Sleekcraft Boats*, 599 F2d 341 (9th Cir. 1979). The File History did not reflect what marketplace consumers would expect or how they were confused.  Accordingly, any preliminary findings of the Examining Attorney had no bearing on this issue and should not have been allowed into evidence.  The admission of this evidence had a prejudicial impact on the jury's determination of the key issue of "likelihood of confusion," resulting in the erroneous Special Finding of no likelihood of confusion. (ER I 2:4-5.)

**2.      Plaintiff Put On Evidence of "Actual Confusion" in the Markets.**

In its case in chief, Ahning put on evidence of  actual likelihood of confusion, far more than what was required of it to prove trademark infringement. Jackie Lin, was the manager of Hawaii Supermarket , a 40,000 square foot supermarket for over 20 years.  His work included purchasing products sold in the store, including Ahning products which Hawaii Supermarket carried for over 20

33

years and also used Anhing's catalog. On the front of the catalog is the logo of Anhing which he said "we call Red Boat." (ER V 682, 683 and Exhibit 22.) Mr. Lin knows the Anhing logo well after all of these years and in addition to the catalog has seen Anhing's logos on their merchandise, trucks, and sales rep uniforms. (Id., p. 684-687 and Exhibit 6.)

Despite his long-term familiarity with Anhing's products which displayed the Anhing Marks, <u>Mr. Lin was actually confused by Viet Phu's Mark when he erroneously ordered Viet Phu's Red Boat fish sauce when he had intended to purchase Anhing's fish sauce for his supermarket</u>. He believed he had ordered Anhing's product because he saw the boat that led him to believe it's Anhing's product. After he placed the order, he realized it was not Anhing's products. (ER V 688-692 and Exhibit 83.) In his 20 years experience as manager at Hawaii Supermarket, no other company had ever used a junk ship but Anhing, except for Viet Phu on this product. (Id., 692 and Exhibit 83.)

### 3. Defendant Offered No Evidence to Dispute Lin's Testimony of Actual Confusion.

Viet Phu put on no evidence to counter Lin's testimony on the issue of likelihood of confusion. Instead, it relied solely on the testimony of Mr. Pham and the USPTO File History for Viet Phu's abandoned trademark application. Had this improper evidence not been admitted, the jury would have had to conclude that

there was a likelihood of confusion, given Mr. Lin's testimony.

Unfortunately, the District Court ignored the fact that the USPTO File History does <u>not</u> reflect an actual review and comparison of Viet Phu's proposed trademark with Anhing's Marks. Indeed, counsel for Viet Phu admitted this:

> <u>While the Prosecution History does not shed any</u>
>
> <u>particular light on the nature or extent of the examining</u>
>
> <u>attorney's consideration of the Anhing's Marks</u>, <u>it is</u>
>
> <u>likely</u> that the examining attorney reviewed them.
>
> . . .
>
> <u>Although the extent of the examining attorney's analysis</u>
>
> <u>of the Anhing's Marks is unknown</u>..

(ER II 189:3-5 and 14-15; emphasis added.)

<u>The record does show that the Examining Attorney spent a total of 13 minutes performing a search of 7 queries and viewed only 5 of the 274 search results obtained from the seventh and final search query. The USPTO records do not reflect which 5 of the 274 records were actually reviewed by the Examining Attorney.</u> (ER III 220, ¶ 5 AND 233-234.) Search strings 1-4 were only for marks with the word "red" or "boat" in the title of the mark, so <u>the Anhing Marks would not have been disclosed</u>. In query 5, the Examining Attorney narrowed the search to marks in International Class 30. After running query 6 for marks with Design

Code with 18.07.03, for "Viking boats, ancient sailing vessels, Chinese junks, boats with single square sail; Junks, Chinese (boats)," the Examining Attorney did not view any results, but instead narrowed the results to marks in Class 30 with Design Code 18.07.03. Of the 274 results that came up in that search, the Examining Attorney appears to have only viewed five (5) of the results.

While a search of USPTO records by Anhing's counsel, using the <u>Examining Attorney's search, string 7 does yield the Anhing Marks among the search results, the record shows that there is no way to know if the Examining Attorney actually looked at those references, particularly if the Examining Attorney only looked at five (5) of the results</u>. (ER III 219, 220 ¶5 and 234.) As discussed above, Viet Phu's counsel admitted this. (ER II 189:3-5 and 14-15.)

Ultimately, the Examining Attorney chose to cite only one prior registration, for the Australian product with the word mark BIG RED BOAT, Registration No. 3853643, containing no design at all. (ER III 221 ¶7 and 237-299.) No comment one way or another was made regarding Anhing's Marks, yet Viet Phu pinned its defense on the <u>absence</u> of such evidence.

This combined with the admission by Viet Phu's counsel, establishes that the evidence had absolutely no probative value because it was speculative, lacked foundation, and was irrelevant.

4.    **The USPTO File History is Inadmissible Hearsay and Improper Opinion on the Ultimate Issue of Likelihood of Confusion.**

While Viet Phu could have designated the Examiner (or any other experienced trademark practitioner) as an expert, it did not do so.  Instead, Viet Phu simply argued that it was <u>likely</u> that the Examiner assigned to Defendant's abandoned trademark application reviewed all of the hits in the search - even though "the extent of the examining attorney's analysis of the Anhing Marks is unknown."  (ER II 189:3-5 and 14-15.)   "Likely" and "unknown" do not rise to the level of reliable, admissible evidence.  Viet Phu's position was built on pure speculation.  In sum, since there was no foundational basis for this assumption, no designated expert, and no basis for any expert opinion, the jury should not have been allowed to consider anything from this File History.

Viet Phu further admitted that "case law is clear that PTO decisions are not dispositive with regards to litigation involving the same trademark. . . ." (ER II 190:5-7).  The jury was not capable of fairly weighing this evidence of a purported expert with such case law in mind, especially when Viet Phu's counsel suggested that the Examining Attorney's findings showed there was no conflict.

The District Court erred in allowing the jury to hear such irrelevant and immaterial evidence of the File History and the Examining Attorney's purported failure to cite to Anhing's Marks as a basis for denial of Viet Phu's Application.

37

This evidence had the prejudicial effect of leading the jury to believe that there was no likelihood of confusion of Viet Phu's Red Boat & Design Mark with Anhing's Marks, resulting in the erroneous Special Verdict that there was no likelihood of confusion, and the Judgment in favor of Viet Phu and against Anhing.

Assuming *arguendo* that the Examining Attorney actually made a comparison of Viet Phu's mark with Anhing's Marks (which is not supported by the record), one Examining Attorney's opinion is not binding, and thus has no bearing on the issues before the court. Examination of applications for trademark registration is conducted ex parte by the assigned Examining Attorney. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc*., 105 U.S. 189, 190, 105 S. Ct. 658, 659 (U.S. 1985) ("[T]rademark registrations are issued after an ex parte proceeding and generally without inquiry into the merits of an application."); *In re Viterra, Inc*., *supra*, 671 F. 3d 1358, 1361 (Fed. Cir. 2012).

> **No matter how dedicated and how competent administrators may be, the possibility of error is always present, especially in nonadversary proceedings. For that reason the Court normally assumes that Congress intended agency action to be subject to judicial review unless the contrary intent is expressed in clear and unambiguous language**. In this

statute Congress has expressed no such intent. On the

contrary, it has given the courts the broadest possible

authority to determine the validity of trademark

registrations "in any action involving a registered mark."

The exercise of that broad power of judicial review

should be informed by the legislative purposes that

motivated the enactment of the Lanham Act."

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc*., supra, 105 U.S. at 213, fn.

13(emphasis added).

The Examining Attorney must follow examination guidelines set forth in the

Trademark Manual of Examining Procedure (the "TMEP"). The TMEP consists of

rules promulgated by the Director of the Trademark Office. 15 U.S.C. § 1051(a)(4).

The TMEP states: "The Manual is published to provide trademark examining

attorneys in the USPTO, trademark applicants, and attorneys and representatives

for trademark applicants with a reference work on the practices and procedures

relative to prosecution of applications to register marks in the USPTO. The Manual

contains guidelines for Examining Attorneys and materials in the nature of

information and interpretation, and outlines the procedures which Examining

Attorneys are required or authorized to follow in the examination of trademark

applications." TMEP Forward, April 2014.  Examining Attorneys have the

discretion to select and apply their own parameters to search the USPTO records to determine whether the applied for mark creates a likelihood of confusion with a prior registration, such that a refusal to register is warranted under Section 2(d) of the Lanham Act. 15 U.S.C. § 1052(d).

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703.

The Examining Attorney was never qualified or identified as an expert for the purposes of this case. Anhing had no opportunity to take the deposition of the Examining Attorney. The USPTO File History does not satisfy the requirements of Fed. R. Evid. 702 because it does not show that the Trademark Examining Attorney even found or considered the Anhing Marks in examining the Application. Therefore, this evidence should have been excluded under this standard as well.

The File History is also inadmissible hearsay. Fed. R. Evid. 801. The District Court erred in allowing Viet Phu's evidence of administrative statements (the USPTO File History) made outside the present proceedings to prove that there

is no likelihood of confusion between Viet Phu's Red Boat & Design mark and Anhing Marks. The admission of this evidence was prejudicial resulting in the erroneous Special Verdict.

**5.      Any Probative Value of the File History Was Outweighed By its Prejudicial Effect, which the Limiting Instruction Did Not Overcome.**

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence. Fed. R. Evid. 401. The Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The File History was not only not probative, but was also highly prejudicial, confusing and likely to mislead the jury. In fact, it did confuse and mislead the jury.

As discussed above, administrative decisions made by USPTO examining attorneys are not binding on the court or a jury. *In re Viterra, supra*, 671 F.3d at 1361; *In re Les Halles de Partis J.V.*, 334 F.3D 1371 (Fed. Cir. 2003). Moreover, Viet Phu's abandonment of the Application rendered the grounds for the USPTO's refusal moot. Thus, this evidence was not only not probative but was prejudicial as it gave the jury the misleading inference that the Examining Attorney (1) identified, (2) actually compared the parties' marks during examination of Viet Phu's

41

application, and (3) made an affirmative determination that there was no likelihood of confusion between the marks. But the fact is, none of this was established by any admissible evidence.

Lastly, the limiting instruction given by the District Court could not overcome the prejudicial effect of this evidence. The Court instructed the jury to consider this evidence only as to the issue of "wilfulness." (ER V 719:1-17.) This was not sufficient however because it could not "**un-ring the bell**" and prevent the jury from being influenced by this evidence on the key issue of "likelihood of confusion." There is no way the jury could "close its ears" to this evidence as it applies to one issue (likelihood of confusion) but keep them open as to the other issue (wilfulness). As a result, this evidence should have been excluded under Rule 403.

In sum, the admission of the File History along with the related testimony of Mr. Pham and the closing argument of defense counsel collectively amounted to prejudicial error which misled and confused the jury as to the legal and factual standards for finding trademark infringement. Fed. R. Evid. 403. The Court abused its discretion in failing to exclude such evidence whose probative value was so outweighed by its prejudicial effect. *U.S. v. Espinoza-Baza*, 647 F.3d 1182 (9th Cir. 2011); *U.S. v. Hitt*, 981 F.2d 422, 423 (9th Cir. 1992). The admission of such inadmissible and prejudicial evidence resulted in the erroneous Special Verdict and

Judgment against Anhing.

## IV.

## THE DISTRICT COURT ERRED IN GRANTING

## DEFENDANT AN N CUONG'S MOTION TO DISMISS

### 1.      The Legal Standard for a Motion to Dismiss

In California, the personal jurisdiction statute extends jurisdiction to

the very limits of constitutional due process. Cal. Code Civ. Proc. § 410.10. This

Court need only determine whether the exercise of jurisdiction would comport with

due process. *TPS Utilicom v. AT&T Corp.*, 223 F. Supp.2d 1089, 1104 (C.D. Cal.

2002). The 14th Amendment's Due Process Clause permits courts to exercise

personal jurisdiction over any defendant who has had "certain minimum contacts"

with the forum state such that "maintenance of the suit does not offend traditional

notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945). There are two bases for personal jurisdiction over nonresident

defendants: (1) "general jurisdiction," when a defendant's activities within the

forum are "substantial" or "continuous and systematic" enough to justify

jurisdiction over the defendant in all matters; and (2) "specific jurisdiction," where

the defendant's contacts with the forum give rise to the subject litigation. Id.

Whether specific jurisdiction lies "turns on the nature and quality of the

defendant's contacts in relation to the cause of action." *Indiana Plumbing Supply,*

*Inc. v. Standard of Lynn Inc.*, 880 F. Supp. 743, 746 (C.D. Cal. 1995). The Ninth

Circuit has articulated a three-prong test for determining the existence of specific

jurisdiction:  (1) the non-resident defendant must purposefully direct his activities

or consummate some transaction with the forum or resident thereof; or perform

some act by which he purposefully avails himself of the privileges of conducting

activities in the forum, thereby invoking the benefits and protections of its laws; (2)

the claim must be one which arises out of or relates to the defendant's

forum-related activities; and (3) the exercise of jurisdiction must comport with fair

play and substantial justice, i.e., it must be reasonable. *Core-Vent Corp. v. Nobel*

*Indus. AB*, 11 F.3d 1482, 1492 (9th Cir. 1993).

The first two requirements "are closely related because they focus on the

relationship of the defendant and the claim to the forum state." *Shell v. Shell Oil*

*Co.*, 165 F. Supp. 2d 1096, 1105 (C.D. Cal. 2001). Once those two elements are

shown, a rebuttable presumption arises that exercise of jurisdiction is reasonable.

The burden is then on the defendant "to present a compelling case that the presence

of some other considerations would render jurisdiction unreasonable." Id.

Where a motion to dismiss for lack of personal jurisdiction is submitted on

affidavits and heard without jurisdictional discovery or an evidentiary hearing, "the

plaintiff need only make a prima facie showing of jurisdictional facts."

*Schwarzennegger v. Fred Martin Motor Co.*, 374 F3d 797, 800 (9th Cir. 2004).

44

The District Court here determined that a hearing was not required, that all "uncontroverted allegations in the Complaint must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." (ER I 12, ¶1.)

Plaintiff's Complaint alleges that An N Cuong (along with Viet Phu) is making unauthorized use of the RED BOAT & Design mark in commerce in violation of Anhing's rights. (ER V 607-626, ¶¶ 45, 47, 48 and 53-56.) Under section 45 of the Lanham Act, 15 U.S.C. § 1127, "commerce" "means all commerce which may lawfully be regulated by Congress." The Commerce Clause of the U.S. Constitution provides that "Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." (U.S. Const., Art. I, § 8, cl. 3.) The Lanham Act also defines "use in commerce" as "bona fide use of a mark in the ordinary course of trade . . . a mark shall be deemed to be in use in commerce – (1) on goods when – (A) it is placed in any manner on the goods or their containers…; and (B) the goods are sold or transported in commerce. 15 U.S.C. § 1127.

### 2. Plaintiff Provided Sufficient Facts Supporting Jurisdiction and Denial of Cuong's Motion to Dismiss.

Defendant's Motion to Dismiss for lack of personal jurisdiction was based on the fact that it is a Vietnamese company with its principal place of business in

Vietnam and has no contacts with the United States or California. (ER V 551-576.) The Motion was supported by conclusory statements of Pham Cuong, that Cuong makes high quality Vietnamese fish sauce in Vietnam and has no connections to the State of California or the United States. (Id., 577-580.)

Anhing provided significant facts contradicting that position, including that:

- Cuong's entire business and the source of all of its income comes from the sale of its Red Boat and design fish sauce which is sold in the United States by Viet Phu. <u>The import records of Cuong shows that Cuong ships its products to Milpital, California</u> with Viet Phu as its destination entry for the Red Boat and design fish sauce product. (ER V 475 ¶ 5 and 485-488.)

- The label that is placed on the Red Boat design fish sauce product states "<u>Made by: An Cuong Co., Ltd.</u>" (Id., ¶ 4 and 484.) <u>An Cuong puts the Red Boat design mark on the fish sauce product and then exports that product to the United States</u>. (Id., 456:18-22.)

- <u>The web site at URLhttp://www.redboatfishsauce.com is registered and operated by Viet Phu in California for the benefit of Cuong</u>. The web site contains video footage of Cuong's manufacturing operations in Vietnam, <u>including an interview with Cuong's owner showing where Cuong's product may be purchased in California</u>. The web site

46

promotes Cuong's product to consumers everywhere, including

California.  (Id., 475 ¶ 6 and 489-497.)

•  Mr. Pham (the V.P. of Viet Phu) states on the website:

"After leaving my homeland and coming to the U.S., I

began cooking more frequently to recapture the flavors of

my youth . . .  Thus began my odyssey to create authentic

and flavorful fish sauce.  My uncles had often talked

about the source of the best fish sauce we ate in Vietnam,

the beautiful tropical island of Phu Quoc.  I set off to

develop my own . . . and in 2006, I expanded a small

family owned factory on Phu Quoc.  The result is Red

Boat Fish Sauce.

(Id., 490; emphasis added.)

•  the website also states:

"Where to Buy - Would you like to see Red Boat Fish

Sauce carried in your favorite store?  Email us at _____

info@redboatfishsauce.com"

(Id., 496 [listing addresses in California.)

This website is thus operated for Cuong's benefit just as much for Viet

Phu's benefit as it an interactive web site allowing Internet users (including those

47

in California) to learn more about Cuong and see where Cuong's product can be purchased here in California. Thus, Cuong was not merely founded to conduct business in Vietnam, but rather for the specific purpose of bringing its fish sauce product into the United States. At the very least, that was its purpose when Mr. Pham went to it in 2006 to expand that family business to manufacture his fish sauce (" I set off to develop my own . . . and in 2006, I expanded a small family owned factory on Phu Quoc. The result is Red Boat Fish Sauce." (Id., 490; emphasis added.) Cuong also purposely availed itself of the privileges of conducting activities in California by listing the dozens of locations were Red Boat fish sauce is sold. This evidence alone is enough to warrant denial of the Motion to Dismiss.

It is also undisputed that Cuong places the Red Boat and design mark on the fish sauce product before sending the product overseas to the United States and specifically to California. Cuong also uses the Red Boat and design mark at its town in Vietnam where the company is located including prominent use on its public banners and other promotional materials. (ER V 475, ¶ 6 and 489-497.)

### 3. Additional Admissions Elicited from Mr. Pham during Trial Support Jurisdiction over Cuong.

During trial, Mr. Pham, the Vice-President of Viet Phu, testified that Viet Phu was incorporated in 2009 and his dream was to bring the fish sauce [from

Vietnam to the U.S.] because "[w]hen I left my country in 1979, all the fish sauce here that we tested, it's not the same. My family miss that." (ER V 698:6-25). Mr. Pham admitted that he was involved with another business back in Vietnam, an LLC, called An Cuong, which manufactures fish sauce that he sells through Viet Phu. Although he said he buys the fish sauce from another company [Cuong], <u>Mr. Pham admitted that he has an ownership in it [Cuong]</u>. (Id., 695.)

<u>An N Cuong was engaged in business since 2006, three years before Mr. Pham decided to have a fish sauce business in the United States. During those three years before he started his own business, Mr. Pham was involved in the manufacturing and sale of fish sauce through family members. "It's another family business, and we sell to other companies in Vietnam and Viet Phu to enter into the United States</u>. **(**Id., 696.) The symbiotic relationship between defendants Viet Phu and Cuong is strong and sufficient to support jurisdiction. The disclosure of these additional facts also makes clear the error of the District Court in granting the motion to dismiss and denying Anhing's request to conduct limited jurisdictional discovery.

It is undisputed that there is an ongoing business relationship between Cuong and Viet Phu in California and that Cuong sends its product to California where it is being sold through many retail locations in this State. The economic reality is that Cuong manufactures its fish sauce in Vietnam for direct placement

49

into California. The products are intended to be sold, and are actually sold to a California company, and resold in countless California markets and retail locations. Moreover, Mr. Pham, the V.P. of Viet Phu, has admitted his participation in the development of the special fish sauce at Cuong's facility and in building up that family business, as a part-owner and in his participation in its profits. Given these facts, Cuong has benefitted heavily, if not exclusively, from California consumers, and jurisdiction exists.

Specific jurisdiction exists because Cuong's contacts with California are substantial and directly related to the allegations. There is submission to a State's authority for disputes that "arise out of or are connected with the activities within the state." *Int'l Shoe Co., supra*, at 319. Where a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State. In other words, submission through contact with and activity directed at a sovereign may justify specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88 (2011).

"The Supreme Court has stated that a defendant's placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788, 180 L. Ed. 2d 765 (2011) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). That is precisely what has occurred here. Cuong has purposefully availed itself of personal California jurisdiction. The infringement claims asserted by Anhing arise directly from the marketing and sale of goods competing with Anhing's registered trademarks in California. Californians are being confused, and are likely to be further confused, subject to Defendants' confusing use of the RED BOAT & Design mark to market its competing fish sauce. As a result, Anhing's claims arise out of Cuong's forum-related activities.

### 4. Jurisdiction also Exists Under the Agency Theory of Personal Jurisdiction.

Whether due process is satisfied depends not only on the quantity of contacts that Cuong has with California, but also on the "quality and nature" of those contacts. *Int'l Shoe Co., supra,* 326 U.S. 310, 319 (1945). Federal courts have exercised jurisdiction over foreign defendants in similar situations based on the theory that two defendants have a close, synergistic relationship that is not necessarily an abuse of corporate organizational form, but it clearly relevant to

51

jurisdictional questions. *Anderson v. Dassault Aviation*, 361 F.3d 449, 453 (8th Cir. 2004).

It is beyond dispute that the website located at www.redboatfishsauce.com is used to market both Viet Phu and An N Cuong as the source of the RED BOAT fish sauce. The video clips available on that website clearly show prominent use of the RED BOAT & Design mark by An N Cuong in its home village in Vietnam, where the fish sauce is manufactured. The interview with Cuong's founder on the website further shows the symbiotic relationship between the two entities; Viet Phu's corporate information is listed on this website, which also shows Cuong manufacturing all of Viet Phu's fish sauce occurring in Vietnam, and the sale of that product throughout California. Indeed, a simple search of Defendants' website using a California zip code shows numerous nearby retail locations where Cuong's manufactured product may be purchased. Furthermore, the product label not only bears "Made by An Cuong" but also has the website address noted above, and that the product is made in Vietnam. (ER V 475, ¶6 and 489-497.)

In addition, video footage on the website identifies Cuong Pham as the "Owner" of "Red Boat Fish Sauce" while at Cuong's plant. On Viet Phu's website, while on the website, Mr. Pham is also referred to as "Owner, Red Boat Fish Sauce". Id. That suggests a potential unity of ownership interest. These facts are more than sufficient to establish jurisdiction. Yet even more testimony elicited

from Mr. Pham during trial provided additional facts showing a unity of ownership interest in these two companies which were "family owned" - and that Mr. Pham received profits from each of these companies.   As a result, it is clear that the Court has jurisdiction over Cuong and that the Motion to Dismiss should have been denied.

**V.**

**THE DISTRICT COURT ERRED IN DENYING ANHING'S**

**REQUEST TO CONDUCT JURISDICTIONAL DISCOVERY**

Both in its Opposition to Cuong's Motion to Dismiss and in a separate Ex Parte Application, Anhing requested permission to conduct limited jurisdictional discovery regarding Cuong's contacts with the state of California.  (ER V 465:13-467:3 and 510-549.)  Anhing made this request in order to fully defend against the Motion and to ensure that Plaintiff and the Court had all relevant facts necessary to conduct a proper evaluation of the Motion.

The discovery sought was limited to written discovery regarding facts pertaining to jurisdictional issues (i.e., contacts between An N Cuong and California).  Although Anhing had previously requested Cuong to produce the distribution agreement between it and Viet Phu, they failed to produce it.  It is inconceivable that Cuong and Viet Phu did not have a written distribution agreement.  Such evidence would be relevant to determine the actual relationship

between the parties and to what extent Cuong conducts his business transactions directly with California.  If the two companies truly operate as separate entities, such a written agreement would exist.  The admitted failure to produce such an agreement supports jurisdiction based on an alter ego theory.

Cuong refused to stipulate to continuing the hearing date to allow such limited discovery. (ER V 512:11-23 and 519-520, ¶¶2-6 and 521-548.)  The discovery was reasonable and justified because the limited documentation which Anhing already had showed some activity by Cuong regularly transacting business with Viet Phu in California. ( Id., 513, 514, 520, ¶¶7-11 and 538-548.)

Jurisdictional discovery is routinely granted when a motion to dismiss pursuant to FRCP 12(b)(2) is pending and a foreign defendant's product has been put into the stream of commerce in the forum state.  *Success Is Yours, Inc. v. Life Success Pub., LLC*, CV10-0758-PX DJC, 2010 WL 4225880 (D. Arizona 10/21/10) ("Denying jurisdictional discovery where further discovery might demonstrate a basis for jurisdiction is an abuse of discretion").  This Court held in *Harris v. Rutsky & Co. Ins. Svcs., Inc. v. Bell & Claimants, Ltd.,* 328 F.3d 1122, 1135 (9th Circ. 2003) that the District Court abused its discretion in denying jurisdictional discovery in a California insurance broker's tort action against the United Kingdom insurance broker's parent, because further discovery might demonstrate facts sufficient to constitute a basis for jurisdiction.  *See also Siano*

54

*Mobil Silicon, Inc. v. Mavcom, Inc.*, C-10-04783 LHK PSG, 2011 WL 1483706 (Northern Dist. Cal. 4/18/11) (noting that 9th Cir. adopted a broad view of the appropriate scope of jurisdictional discovery). *See also, Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 431 at note 24 (9th Cir. 1977).

Under the circumstances, since Plaintiff had limited known facts but certainly sufficient facts to justify further discovery, it was an abuse of discretion to not give Plaintiff the opportunity conduct that limited discovery to obtain additional facts not otherwise available for Plaintiff and the Court's proper analysis of the Motion.

## VI.

## CONCLUSION

The Judgment should be reversed and the matter remanded for a court trial consistent with this Court's opinion.

Dated: June 15, 2015                    Respectfully submitted,

*/s/ Jill A. Thomas*
Robert S. Lawrence
Jill A. Thomas
CALLAHAN & BLAINE, APLC
3 Hutton Centre Drive, Ste 900
Santa Ana, California 92707
Tel (714) 241-4444
Fax (714) 241-4445

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28–2.6 of the Rules of the United States Court of Appeals for the Ninth Circuit, Appellant states that it is unaware of any related cases other than the previously consolidated cross-appeal arising out of the same district court action, which bears Docket No. 14-56914.

Respectfully submitted this 16th day of June, 2015.

**CALLAHAN & BLAINE, APLC**

By:*/s/ Robert S. Lawrence*
    Robert S. Lawrence
Attorneys for Appellant,
ANHING CORPORATION

## CERTIFICATE OF COMPLIANCE

I certify that the text of Appellant's Opening Brief consists of 11,793 words as counted by the WordPerfect for Windows, Version 13, word processing program used to generate the brief, exclusive of the cover, title page, table of contents, table of authorities, and this certificate of word count.

Dated: June 15, 2015        **CALLAHAN & BLAINE, APLC**

By:*/s/ Jill A. Thomas*
   Jill A. Thomas
Attorneys for Appellant,
ANHING CORPORATION

<u>**CERTIFICATE OF SERVICE**</u>

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  I am employed in the office of a member of the bar of this Court at whose direction service was made.  My business address is Callahan & Blaine, APLC, 3 Hutton Centre, Ninth Floor, Santa Ana, California 92707.

On June 15, 2015, I served the foregoing document described as:

**BRIEF OF APPELLANT**

**[X]** <u>**BY ELECTRONIC MAIL:**</u> I electronically filed such document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all other parties appearing on the docket sheet as listed below.

**[X]** <u>**BY MAIL:**</u>  I deposited such envelope in the mail at Santa Ana, California.  The envelope was mailed with postage thereon fully prepaid.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the United States Postal Service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.  Executed on June 15, 2015 at Santa Ana, California.

 /s/ Elena Richards
Elena Richards
erichards@callahan-law.com

## SERVICE LIST
### ANHING CORPORATION V. VIET PHU, INC., ET AL.
### Case No. 14-56664, 14-56914

| | |
|---|---|
| Steven E. Tiller<br>**WHITEFORD, TAYLOR & PRESTON, LLP**<br>7 St. Paul Street, Suite 1500<br>Baltimore, Maryland 21202-1636<br>Tel: (410) 347-9425<br>Fax: (410) 223-4325<br>stiller@wtplaw.com<br>emillar@wtplaw.com | Attorneys for Defendants, VIET PHU, INC. and AN N CUONG CP., LTD. |

## <u>CERTIFICATE OF SERVICE</u>

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. I am employed in the office of a member of the bar of this Court at whose direction service was made. My business address is Callahan & Blaine, APLC, 3 Hutton Centre, Ninth Floor, Santa Ana, California 92707.

On June 18, 2015, I served the foregoing document described as:

### BRIEF OF APPELLANT

**[X]** **<u>BY MAIL:</u>** I deposited such envelope in the mail at Santa Ana, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct. Executed on June 18, 2015 at Santa Ana, California.

/s/ Elena Richards
Elena Richards
erichards@callahan-law.com

### SERVICE LIST
### ANHING CORPORATION v. VIET PHU, INC., ET AL.
**Docket No. 14-56664, 14-56914**

| | |
|---|---|
| Steven E. Tiller<br>**WHITEFORD, TAYLOR & PRESTON, LLP**<br>7 St. Paul Street, Suite 1500<br>Baltimore, Maryland 21202-1636<br>Tel: (410) 347-9425<br>Fax: (410) 223-4325<br>stiller@wtplaw.com | Attorneys for Defendants, VIET PHU, INC. and AN N CUONG CP., LTD. |